UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | | |
|---|---|---|
| CONARD PROFITT, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:19-CV-80-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| ANDREW M. SAUL, | ) | **ORDER** |
| Commissioner of Social Security, | ) | |
| | ) | |
| | | |
| Defendant. | | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on cross-motions for Summary Judgment [R. 18; R. 23]. The Plaintiff, Conard Profitt, exhausted his administrative remedies and brought this action under 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision denying his claim for disability insurance benefits. The Court, having reviewed the record and the parties' motions, reverses the Commissioner's decision and remands this case for further proceedings.

I.      **Procedural Background**

On February 29, 2016 Profitt filed an application for disability insurance benefits. [Administrative Record (AR) 171-77] His application was initially denied and again on reconsideration, after which he requested a hearing before an Administrative Law Judge (ALJ). [AR 66-123] The ALJ held a hearing on April 19, 2018 [AR 32-65] and subsequently issued an unfavorable decision on August 21, 2018 finding Profitt was not disabled since February 22, 2016 [AR 15-24]. The Appeals Council denied his request for review [AR 1-3] and the ALJ's decision became the final decision of the Commissioner. Profitt then filed her Complaint against the Commissioner in this Court. [R. 1]

II.     **Standard of Review**

This Court's review of the Commissioner's decision is limited to determining whether it is supported by "substantial evidence" and made in accordance with proper legal standards. *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *Cutlip v. Sec'y of Health and Human Servs*., 25 F.3d 284, 285-86 (6th Cir. 1994). "The substantial evidence standard is met if a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Longworth v. Comm'r of Soc. Sec*., 402 F.3d 591, 595 (6th Cir. 2005) (internal quotations omitted). "Substantiality must also be based on the record 'as a whole.'" *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984) (citing *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980)). However, "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ," the Court must uphold the Commissioner's decision. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). This Court cannot review the case de novo, resolve conflicts of evidence, or decide questions of credibility. *Cutlip*, 25 F.3d at 286; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

To determine disability under the Social Security Act, the ALJ must conduct a five-step analysis. 20 C.F.R. § 404.1520.

1. First, plaintiff must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits.

2. Second, plaintiff must show that he suffers from a "severe impairment" in order to warrant a finding of disability.

3. Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment

meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.

4.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.

5.  For the fifth and final step, even if the plaintiff's impairment does prevent him from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

### III.   Analysis

The ALJ followed the five-step evaluation process as required by SSA regulations. [AR 18-24]. At step one, the ALJ found Profitt had not engaged in substantial gainful activity since February 22, 2016 (the alleged onset date). [AR 18] At step two, the ALJ found Profitt had the following severe impairments: herniated nucleus pulposus/degenerative disc disease, cervical spine and lumbar spine, status-post lumbar laminectomy and discectomy with annular repair; chronic obstructive pulmonary disease/asthma; and bilateral carpal tunnel syndrome. [*Id.*] However, Profitt's degenerative joint disease in both hips, major depressive disorder, and generalized anxiety disorder were all found to be not "severe." [AR 19-20] At step three, the ALJ determined Profitt did not have an impairment or combination of impairments that met or medically equaled in severity one of the listed impairments. [AR 20] Profitt does not contest the ALJ's findings at steps one through three.

At step four, the ALJ determined Profitt's "residual functional capacity" (RFC). [AR 20-21] An individual's residual functional capacity is the most the individual can still do despite his or her impairment-related limitations. 20 CFR § 404.1545(a)(1). The ALJ found that Profitt could perform "light work," including the ability to lift and carry 20 pounds occasionally and 10 pounds frequently; push and pull; stand or walk for 6 hours in an 8-hour workday; sit for 6 hours

3

in an 8-hour workday; occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; frequently balance; occasionally stoop, kneel, crouch, or crawl; frequently handling, fingering and feeling with his arm and hands, but should avoid concentrated exposure to fumes, odors, dust, gases and poor ventilation, extreme temperatures, vibration and hazards such as unprotected heights or dangerous machinery. [AR 20-21] Based on this RFC and the testimony of the vocational expert, the ALJ determined that Profitt could return to his previous work and could perform other jobs existing in the national economy. [AR 22-23] Therefore, the ALJ found Profitt was "not disabled." [AR 24]

On appeal, Profitt argues that the ALJ improperly determined his RFC by failing to explain why she gave "little weight" to Profitt's treating physician's opinion (Dr. Breeding), and that the RFC is not supported by substantial evidence in the record.[1] [R. 19 at 4-5]

In discussing her RFC determination, the ALJ reviewed a multitude of treatment records but considered only two medical opinions: one from the Mountain Comprehensive Health Corporation (MCHC) by Dr. Breeding[2] and another from Dr. Lamkin. [AR 22] The first opinion considered was an April 7, 2017 report from MCHC, which states that Profitt was evaluated as having a "lumbar disc herniation" and the "impression" was that Profitt "remains totally disabled from any occupation due to medical problems." [AR 839] The ALJ then noted that Profitt's "physical exam of that date was entirely normal," including his neck, extremities, neurological,

---

[1] The Commissioner initially argues that Profitt's argument is "so undeveloped" that it should be "considered waived." [R. 23 at 7-8] "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived" because it "is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones." *United States v. Fowler*, 819 F.3d 298, 309 (6th Cir. 2016). However, Profitt's argument is not so "skeletal" or "perfunctory" to be deemed waived. Profitt clearly explained pertinent parts of Dr. Breeding's assessments, cited to the record, explained the regulatory requirements that apply, compared how the ALJ's RFC contradicts Dr. Breeding's, argues that the ALJ gave "little weight to Dr. Breeding but fails to explain why she rejects his opinions," and concluded that the ALJ improperly determined Profitt's RFC. Plaintiff's argument is light on some details, but not so undeveloped as to not be considered on the merits.
[2] This report was "[e]lectronically signed by Heather Yates APRN on 04/07/2017 10:30 AM on behalf of Van S. Breeding MD." [AR 840]

and psychiatric exam. [AR 22] Second, the ALJ considered a statement made by Dr. Lamkin[3] on August 19, 2016 that simply says, "above patient is not able to return to work permanently." [AR 819] The ALJ notes that Dr. Lamkin's progress notes show Profitt "has severe persistent asthma, but claimant's physical exam was essentially unremarkable, and his chest was clear" and that a "functional capacity evaluation" from August 2017 by physical therapist (PT) Jennifer Crisp showed Profitt had no shortness of breath and normal cardiovascular response to increased activity. [AR 1081; 1205; 22] The ALJ concludes by giving "great weight to the opinion of DDS medical consultants" but "gives little weight to the opinions of treating physicians for reasons indicated." [AR 22] The "reasons indicated" are presumably that the MCHC opinion was inconsistent with the results of the physical exam that day and Dr. Lamkin's August 2016 statement was inconsistent with Dr. Lamkin's treatment notes and the PT's August 2017 report.

It is unclear whether the ALJ's reference to "the opinions of treating physicians" only includes the two opinions explicitly cited (the MCHC April 2017 opinion and Dr. Lamkin's August 2016 opinion) or whether it encompasses all other opinions in the record from Profitt's treating physicians. Nevertheless, it is odd that the ALJ chose to cite and discount two "opinions" that, under SSA regulations, are not considered "medical opinions" at all, because they address issues that are reserved for the Commissioner. 20 C.F.R. § 416.927(d). Specifically, a "statement by a medical source that you are 'disabled' or 'unable to work'" are "opinions on issues reserved to the Commissioner . . . [and] are not medical opinions." *Id.* The ALJ apparently did not recognize this or explain that the MCHC opinion that Profitt is "totally disabled" and Dr. Lamkin's opinion that Profitt was "not able to return to work permanently" were statements on issues reserved for the Commissioner. [AR 22]

---

[3] The ALJ, on one occasion, incorrectly states Dr. Lamkin's name as "Dr. Larkin." [AR 22]

Nevertheless, there are other statements in the record from Profitt's treating physician that do qualify as "medical opinions."[4] Profitt points out two such medical opinions from Dr. Breeding where he assessed Profitt's physical capacity and abilities. [R. 19 at 5]

First, on January 6, 2017,[5] Dr. Breeding filled out an "Accommodation Request Assessment Form" which included a "physical capacity assessment form." [AR 1707-1714] Dr. Breeding indicated that "in a workday" Profitt can only sit, stand, walk, or drive for 1-2 hours; can occasionally lift or carry 11 to 24 pounds but can never lift or carry 25 pounds or more; can only occasionally push/pull up to 10 pounds and never more than that; and can never bend/stoop, squat, kneel, crawl, climb, or twist, but can occasionally balance and frequently reach. [AR 1712] Dr. Breeding further indicated that Profitt cannot use either hand for repetitive pushing/pulling; has "restrictions of activities" that involve exposure to cold, heat, wet, or humidity, vibration, exposure to fumes, odors, chemicals, gases, or dust, moving mechanical parts, and operating equipment, due to his sciatica and asthma. [AR 1713]

Second, on February 28, 2018, Dr. Breeding filled out an "Assessment of Ability To Do Work-Related Activities" form. [AR 1604-06] On the form, Dr. Breeding indicated the following: Profitt could only lift and/or carry less than 10 pounds due to Profitt's degenerative disc disease, sciatica, and cervicalgia. [AR 1604] Profitt could only sit, stand, and/or walk for a total of less than 2 hours in an 8-hour day and a total of 15 minutes without interruption due to his degenerative disc disease, foot corns, asthma, sciatica, and cervicalgia [AR 1604-05] With respect to postural activities, he can "never" climb, stoop, balance, or crouch, and can only

---

[4] Under SSA regulations, a "medical opinion" is defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).
[5] Both parties cite to medical documentation in the record dated November 28, 2016 on the first page [AR 1707] but signed by Dr. Breeding on January 6, 2017 on the last page [AR 1713]. Plaintiff references the November 2016 date and the Commissioner references the January 2017 date, but both parties are referring to the same document.

"occasionally" kneel or crawl due to his degenerative disc disease. [AR 1605] Profitt's ability to reach and push/pull are "affected by [his] impairment" due to pain and limited range of motion. [*Id.*] The medical findings that support this assessment are an MRI and an x-ray. [*Id.*] Profitt's "environmental restrictions" include heights, moving machinery, extreme temperatures, chemicals, dust, fumes, and humidity; all due to his chronic obstructive pulmonary disease, asthma, degenerative disc disease, and sciatica. [AR 1606] Lastly, Dr. Breeding indicated that lifting, carrying, and "repetitive movement" are "affected by the impairment" and on average, Profitt's impairments or treatment would cause him to be absent from work "more than two days a month." [AR 1606]

These are clearly "medical opinions" from Dr. Breeding (Profitt's treating physician)[6] about what Profitt can and cannot do considering his impairments. The ALJ erred in failing to consider them or, if she did consider the opinions without explicitly identifying them, then she failed to explain her reasons for giving the opinions little weight.

SSA regulations require that "[r]egardless of its source, [an ALJ] will evaluate *every* medical opinion we receive." 20 C.F.R. § 404.1527(c) (emphasis added); *Sharp v. Barnhart*, 152 F. App'x 503, 507 (6th Cir. 2005) ("The ALJ must evaluate every medical opinion received . . .") (alterations and quotations omitted). The ALJ clearly did not do so here.

Further, an ALJ must give the opinion of a treating source "controlling weight" if she finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic

---

[6] A treating physician or "treating source" is an "acceptable medical source" who has provided the claimant "with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship" with the claimant. 20 C.F.R. § 404.1527(1)(2). The record contains office treatment records from Dr. Breeding that indicate he had an ongoing treatment relationship with Profitt for years. Although the ALJ never mentions Dr. Breeding's name, the ALJ's reference to the "opinions of treating physicians" in the same paragraph that she considered and cited to a medical record from Mountain Comprehensive Health Corporation signed by Dr. Breeding suggests that the ALJ considered Dr. Breeding to be a treating physician as well. Additionally, Profitt describes Dr. Breeding as his treating physician [R. 19 at 5] and the Commissioner does not argue otherwise.

7

techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20

C.F.R. § 404.1527(c)(2); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If

the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain

factors in determining what weight to give the opinion. *Wilson*, 378 F.3d at 544. The ALJ is also

required to articulate "good reasons in [her] notice of determination or decision for the weight"

given to the claimant's treating source's opinion. *Id.* An ALJ's decision denying benefits "must

contain specific reasons for the weight given to the treating source's medical opinion, supported

by the evidence in the case record, and must be sufficiently specific to make clear to any

subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion

and the reasons for that weight." *Id.* (quoting Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *5

(1996)). "The requirement of reason-giving exists, in part, to let claimants understand the

disposition of their cases, particularly in situations where a claimant knows that his physician has

deemed him disabled and therefore might be especially bewildered when told by an

administrative bureaucracy that [he] is not, unless some reason for the agency's decision is

supplied." *Id.* (quoting *Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir. 1999) (internal quotations

omitted). "The requirement also ensures that the ALJ applies the treating physician rule and

permits meaningful review of the ALJ's application of the rule." *Id.* "Because the reason-giving

requirement exists to 'ensur[e] that each denied claimant receives fair process,'" the Sixth Circuit

has "held that an ALJ's failure to follow the procedural requirement of identifying the reasons

for discounting the opinions and for explaining precisely how those reasons affected the weight

given denotes a lack of substantial evidence, even where the conclusion of the ALJ may be

justified based upon the record." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.

2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007) (internal

quotations omitted)). In other words, a "court cannot excuse the denial of a mandatory

procedural protection," such as the reason-giving requirement of the treating physician rule,

simply because "there is sufficient evidence in the record for the ALJ to discount the treating

source's opinion and, thus, a different outcome on remand is unlikely. A procedural error is not

made harmless simply because the aggrieved party appears to have had little chance of success

on the merits anyway." *Wilson*, 378 F.3d at 546.

Profitt argues that the ALJ erred by failing to explain her reasons for rejecting Dr.

Breeding's opinions. Indeed, nowhere does the ALJ mention Dr. Breeding's name or his January

2017 or February 2018 assessments of Profitt's physical abilities. Rather, in a sweeping

statement, the ALJ summarily gave "little weight to the opinions of treating physicians for

reasons indicated." [AR 22] It is unclear if the ALJ considered Dr. Breeding's two other opinions

and if so, what her reasons are for giving them little weight. Therefore, the ALJ's decision must

be reversed and remanded for further proceedings. *Bass v. McMahon*, 499 F.3d 506, 512 (6th

Cir. 2007) ("*Wilson* requires reversal when a treating physician's opinion was ignored and no

reasons for doing so were provided.").

The Commissioner argues that the ALJ gave little weight to Dr. Breeding's opinions

"because the opinions were not consistent with objective medical records from the same general

period that reflect essentially normal or fairly unremarkable results." [R. 23 at 9] It is true that

the ALJ implied such a reason regarding the conclusory statement from April 2017 that Profitt

was "totally disabled." But again, that statement does not qualify as a medical opinion and the

ALJ never mentions, cites to, or discusses the far more detailed and relevant physical

assessments made in January 2017 and February 2018 by Dr. Breeding. *Bowlin v. Astrue*, No.

6:09-CV-02-DCR, 2009 WL 2423309, at *4 (E.D. Ky. Aug. 5, 2009) (holding ALJ failed to

comply with the "good reasons requirement" where the ALJ "never addressed" the "specific opinions that he found questionable and/or unacceptable" and did not explain "why [the] opinions are not supportable" or "how they are inconsistent with other medical evidence."). "The ALJ is required to provide good reasons not merely to show that he rejected a treating source's opinion, but rather to demonstrate that he had sufficient reasons for doing so." *Id.* The ALJ did not demonstrate those reasons here.

The Commissioner engages in post-hoc weighing of Dr. Breeding's opinions, describing them as "check the box" forms that were "to some degree incomplete" and "provided overly restrictive limitations without any real explanation." [R. 23 at 3] These would all likely be permissible factors for the ALJ to consider, but nowhere in her decision does the ALJ describe Dr. Breeding's opinion this way (because she does not discuss them at all). This Court must look to the basis articulated by the ALJ in her written decision and not the Commissioner's later rationalizations. *Hicks v. Commissioner*, 909 F.3d 786, 808 (6th Cir. 2018).

The Commissioner argues that the ALJ's determination of Profitt's RFC included Dr. Breeding's medical records and his January 2017 and February 2018 opinions. [R. 23 at 8] While the ALJ did cite to some of Dr. Breeding's medical records, it is not at all evident that the ALJ considered or was aware of (much less gave good reasons for discounting) his medical opinions from January 2017 or February 2018. Additionally, the ALJ's decision to credit Dr. Breeding's medical records but ignore his physical capacity assessments only amplifies the ALJ's error.

In *Bowen*, the Sixth Circuit held that an ALJ erred by failing to mention the claimant's treating source's RFC assessment, despite citing to the physician's treatment notes. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747-49 (6th Cir. 2007). The ALJ had instead adopted the RFC assessment of an SSA reviewing physician and the ALJ's rationale was that the SSA

10

physician's assessment was supported by treatment records from a specific medical facility. *Id.*
The Sixth Circuit explained that the "ALJ failed to note, however, that the vast majority of those
treatment records are initialed by none other than [the claimant's treating physician]. This
presents a problem of inconsistency similar to that found in *Hall* [7] because the ALJ lent credence
to [the treating physician] in one respect (albeit unwittingly), but then ignored her RFC
assessment without explanation." *Id.* This is precisely what the ALJ did here—the ALJ credited
Dr. Breeding's treatment notes but ignored his physical capacity assessments. Like in *Bowen*, the
Sixth Circuit explained that "[o]n the one hand, this could be seen as 'indirectly attacking' the
supportability of [the treating physician's] opinion on the basis that [her] treatment records are
inconsistent with her RFC assessment," or "[a]lternatively, it might be viewed as further
evidence that the ALJ simply overlooked [the treating source] opinion." *Id.* The problem was, as
it is here, the Court simply did not know which one was the case. The Court concluded there was
"no rational explanation for crediting [the treating physician's] treatment notes . . . but then
discounting her RFC assessment without the slightest mention." *Id.* The Court simply did know
*why* the ALJ disregarded the treating physician's RFC assessment, and "the goals of [the treating
physician rule] cannot be satisfied by bald speculation." *Id.*

Here, the ALJ implicitly credited, perhaps unwittingly, Dr. Breeding's treatment notes,
but then ignored his physical capacity assessment without explanation. The Commissioner may
argue that the ALJ indirectly attacked Dr. Breeding's assessment on the basis that his treatment
records are inconsistent with his unmentioned physical capacity assessment, but that is precisely
the argument the Sixth Circuit rejected in *Bowen* because it required too much speculation. The
Court rejects that same argument here.

---

[7] *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456 (6th Cir. 2005).

Lastly, the ALJ's failure to address Dr. Breeding's opinions was not harmless error, and notably, the Commissioner does put forward the argument that it was. The Sixth Circuit has outlined a few "rare case[s]" where the ALJ's failure to follow the letter of the rule is deemed harmless. *Bowen*, 478 F.3d at 750. None apply here. Dr. Breeding's opinions are not "so patently deficient that the Commissioner could not possibly credit [them]." *Blakley*, 581 F.3d at 409. And the ALJ's evaluation of the medical opinion evidence did not meet the goals of the treating physician rule because the Court cannot engage in meaningful review and determine whether the ALJ implicitly diminished Dr. Breeding's opinions or simply overlooked them. *Id.* Rather, "invoking the harmless-error exception here—where the ALJ entirely failed to address the primary treating source's presumptively supportable opinion—plainly risks having the exception swallow up the rule. A remand is therefore necessary so that the ALJ may fully consider and address" all of Profitt's treating physicians' opinions in accordance with the treating physician rule. *Bowen*, 478 F.3d at 750.

Accordingly, for the reasons stated above, the Court will reverse and remand the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision.

**IT IS ORDERED** as follows:

1.     The Plaintiff's Motion for Summary Judgment [**R. 18**] is **GRANTED.**

2.     The Commissioner's Motion for Summary Judgment [**R. 23**] is **DENIED.**

3.     The decision of the Commissioner is **REVERSED** and **REMANDED** under Sentence Four of 42 U.S.C. 405(g).

4.     A judgment will be entered contemporaneously with this Order.

This the 4th day of January, 2021.

_Claria Horn Boom_

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY